# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO. 1:22-cv-23584-DPG

TRACELEY BOOTLE,

      Plaintiff,

v.

AMERICAN BANKERS LIFE ASSURANCE
COMPANY OF FLORIDA,

      Defendant.

_____/

## DEFENDANT AMERICAN BANKERS LIFE ASSURANCE COMPANY OF FLORIDA'S MOTION TO DISMISS COUNTS III-VI OF THE FIRST AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

Defendant American Bankers Life Assurance Company of Florida ("ABLAC"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectfully moves to dismiss with prejudice Counts III through VI of the First Amended Complaint (ECF No. 26) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.  In support of this motion and supporting memorandum of law, ABLAC states as follows:

## INTRODUCTION

Plaintiff Traceley Bootle ("Bootle" or "Plaintiff"), a former ABLAC employee, seeks relief for alleged violations of the notice provisions of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").  Plaintiff claims that ABLAC violated 29 U.S.C. § 1166, *et seq*., and 29 C.F.R. § 2590.606-4, *et seq*., by failing to provide her sufficient notice of the right to elect continued health benefits following the termination of her employment.  She asserts four counts alleging COBRA violations: Count III (Failure to Provide Timely Notice of Continuing Coverage in Violation of Section 502 of ERISA and 29 U.S.C. §§ 1132, 1163(a)(1), (2) and (4), 1166(a) and

29 C.F.R. § 2590.606-4); Count IV (Failure to Provide the Address to Which Payments Should be Sent in Violation of 29 C.F.R. § 2590.606-4(b)(4)(xii)); Count V (Failure to Include Explanatory Information in Violation of 29 C.F.R. § 2590.606-4(b)(4)(vi));  and Count VI (Failure to Provide COBRA Notice Written in a Manner Calculated "To Be Understood By The Average Plan Participant" in Violation of 29 C.F.R. § 2590.606-4(b)(4)) (the "COBRA Counts").[1]  *See* First Amended Complaint ("Am. Compl."), ¶¶ 66-112.  As a result of the alleged COBRA violations, Plaintiff seeks injunctive relief, statutory penalties in the amount of $110 per day, and attorneys' fees and costs.  Am. Compl., ¶ 94.  Notably, although these claims are premised on the alleged deficient Notice, Plaintiff fails to attach a copy of such Notice to her original or First Amended Complaint.  A review of such Notice, which the Court may properly consider because it is expressly referenced in and incorporated into Plaintiff's First Amended Complaint, demonstrates clearly that all of Plaintiff's COBRA claims are without any factual or legal basis.

Both the original complaint (ECF No. 1-2) and First Amended Complaint are a copy-and-paste from complaints in other cases filed by Plaintiff's counsel.[2]  Its allegations, right down to the typos, are lifted directly from complaints in other cases about other companies' COBRA notices, without regard for how they relate to Plaintiff, ABLAC, or the COBRA Notice at issue.  As a

---

[1] Counts I and II allege claims under the Florida Civil Rights Act of 1992, Fla. Stat. §760.01, *et seq*., and the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*., respectively.  ABLAC is filing an Answer and Affirmative Defenses to those claims contemporaneously with the filing of this motion in response to Plaintiff's First Amended Complaint.

[2] Most of the First Amended Complaint's COBRA allegations are identical to those in *Heyaime v. Spirit Airlines, Inc.*, No. 0:21CV61779 (S.D. Fla. 2021), aside from minor alterations. *Compare* Am. Compl. ¶¶ 31-36, 75-77, 79-112 *with Heyaime* Compl. Dkt. 1, ¶¶ 36-41, 68-70, 73-107; *see also* Am. Compl. ¶¶ 83, 89, 92 (containing typo, missing word, and missing punctuation, respectively); *Heyaime* Compl. Dkt. 1, ¶¶ 77, 83, 86 (containing same typo, same missing word, and same missing punctuation).  A copy of the *Hevaime* Complaint is attached as **Exhibit 1**;  *see also Beasley v. University of Miami*, No. 1:21CV22260 (S.D. Fla. 2021), Compl. Dkt. 1, ¶¶ 94, 100, 103 (similarly containing same typo, same missing word, and same missing punctuation).

result, the First Amended Complaint contains holdover allegations that do not apply and asserts "facts" that are contradicted by documents referenced or incorporated in the First Amended Complaint, and must therefore be disregarded.

These Counts should be dismissed because the Plaintiff lacks constitutional standing to sue for alleged injuries because she was no longer a plan participant or beneficiary at the time she filed suit.  Dismissal is also proper because Plaintiff has failed to plead plausible factual allegations that support the elements of her alleged COBRA causes of action against ABLAC.  Her claims regarding the alleged insufficiency of the COBRA election notice she received are refuted by the Notice itself and lack merit.  For these reasons, as more fully set forth below, the Court should dismiss Counts III through VI with prejudice.

## BACKGROUND AND RELEVANT FACTS

Plaintiff was employed with ABLAC as a supervisor.  Am. Compl., ¶ 16.  During her employment, she was a participant in an employer sponsored employee welfare benefit plan created pursuant to the Employee Retirement Income Security Act ("ERISA") and sponsored by Assurant, Inc. as Plan Administrator (the "Plan").[3]  Plaintiff's employment was involuntarily terminated on February 6, 2020. Am. Compl., ¶ 24.  The termination constituted a qualifying event within the meaning of ERISA, 29 U.S.C. § 1163(2).  COBRA permits qualified ERISA plan beneficiaries who lose coverage under a group health plan to elect continuation health coverage for a period up to 18 months.  29 U.S.C. § 1162(2)(A).  The COBRA election must be completed during the 60-day period following receipt of a COBRA election notice. *Id*. § 1165(a)(1).  Plaintiff claims – in conflicting allegations – that she did not receive a COBRA election notice, yet she also

---

[3] ABLAC is an indirect subsidiary of Assurant, Inc. *See* ABLAC's Corporate Disclosure Statement, ECF No. 12.

alleges that the COBRA notice she received failed to comply with statutory and regulatory requirements. *Compare* Am. Compl. ¶¶ 12, 14, 26, 37-38, 78 (no notice received) and ¶¶ 36, 72, 81, 83-88, 93, 96-100, 102-104, 109, 112 (non-compliant notice).   But Plaintiff is wrong on both fronts.  She in fact received a COBRA notice that complied fully with COBRA.

On February 12, 2020, just 6 days after the termination of Plaintiff's employment on February 6, 2020, a COBRA notice was sent to Bootle at her address of record (the "2020 COBRA Notice") informing her of her ability to continue health insurance coverage.[4]  A copy of the 2020 COBRA Notice is attached as **Exhibit 2**.  The Notice prominently states on the first page that it contains important information regarding COBRA benefits:

> **IMPORTANT NOTICE REGARDING YOUR COBRA CONTINUATION COVERAGE**
>
> The following notice contains important information about your† right to continue coverage through the group health plan benefits sponsored by **Assurant, Inc.** (the "Plan(s)") as well as other health coverage options that may be available to you†, including coverage through the Health Insurance Marketplace…. Your COBRA Election Form lists these specific benefits. Please see your Summary Plan Description ("SPD") for specific details about the Plan(s). Please make sure you read the information contained in this notice **very** carefully as it describes your rights and obligations under the COBRA regulations....[5]
>
> Enclosed in this packet you will find the following:
>
> **COBRA Election Notice and Other Health Coverage Alternatives** - this outlines your COBRA rights, including deadlines, duration of coverage(s), and your payment responsibilities.

Exhibit 2, at 1.  The Notice advised Plaintiff that the enclosed COBRA Election Form was due "on

---

[4] The Court may consider the attached COBRA notices under the incorporation by reference doctrine, which allows a court to consider a document attached to a motion to dismiss without converting the motion into one for summary judgment where, as here, the attached document is "(1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

[5] All emphasis is in the original unless otherwise indicated.

or before **5/2/2020**." *Id*.   The 2020 COBRA Notice, mailed by WageWorks, Inc., the Plan's

COBRA benefits administrator, further stated that, "If you have any questions or require further

clarification about this notice or your rights to COBRA coverage, please feel free to contact our

office so we may assist you. Our Customer Service Representatives may be reached at 888-678-

4881 or through the Message Center at **mybenefits.wageworks.com**." *Id*.

On March 11, 2021, Congress enacted the American Rescue Plan Act of 2021 ("ARPA").

Pub. L. No. 117-2 [H.R. 1319], 135 Stat. 4 (2021).   Section 9501 of the ARPA provides for

temporary COBRA premium assistance for certain "Assistance Eligible Individual" for periods of

coverage beginning on or after April 1, 2021, through periods of coverage beginning on or before

September 30, 2021. On May 18, 2021, the Internal Revenue Service and the Treasury Department

issued Disaster Relief Notice 2021-31 (https://www.irs.gov/pub/irs-drop/n-21-31.pdf) providing

guidance regarding COBRA continuation coverage and COBRA premium assistance under the

ARPA.   Enactment of the ARPA triggered a second COBRA continuation notice to Plaintiff on

June 7, 2021 (the "2021 COBRA-ARPA Notice").   A copy of the 2021 COBRA-ARPA Notice is

attached as **Exhibit 3**.   The 2021 COBRA Notice was also mailed to Bootle at her address of

record.   The 2021 COBRA-ARPA Notice provided:

> **IMPORTANT NOTICE REGARDING YOUR COBRA CONTINUATION**
> **COVERAGE AND EXTENDED ELECTION PERIODS UNDER THE AMERICAN**
> **RESCUE PLAN ACT OF 2021 (ARPA)**
>
> **Our records show that you or a COBRA Qualified Beneficiary in your**
> **family was eligible to elect COBRA and did not elect, or elected COBRA**
> **continuation coverage and dropped such coverage or elected COBRA**
> **continuation coverage and have not paid your account current. Under**
> **ARPA, you and/or your dependents may be eligible for premium**
> **assistance and a new right to elect COBRA continuation coverage for the**
> **period of April 1, 2021 - September 30, 2021....**

Exhibit 3, at 1.   The 2021 COBRA-ARPA Notice stated that the COBRA-ARPA election form

was required to be completed and submitted by August 9, 2021.   *Id*.

As stated in the 2021 COBRA-ARPA Notice, notwithstanding her failure to elect COBRA coverage in 2020, the ARPA extended the election period such that the Plaintiff could have been eligible to elect COBRA continuation coverage benefits for the period from April 1, 2021 through September 30, 2021 and to possibly receive premium assistance – had she elected to do so by August 9, 2021. *Id.* at 1, 10.   Plaintiff does not allege that she elected COBRA continuation coverage pursuant to the 2020 COBRA Notice or the 2021 COBRA-ARPA Notice.

On July 26, 2022, Plaintiff filed her original complaint. ECF No. 1-2.  ABLAC filed its first motion to dismiss in response on November 23, 2022. ECF No. 15.  Plaintiff then filed her First Amended Complaint on December 15, 2022.[6] ECF. No. 26.  In Plaintiff's First Amended Complaint, she did not cure any of the original complaint's deficiencies or attempt to address the inconsistencies within her COBRA claims as pointed out by ABLAC's first motion to dismiss.  As noted earlier, neither the original complaint nor the First Amended Complaint included a copy of ABLAC's 2020 COBRA Notice or the 2021 COBRA-ARPA Notice.  But both Notices were included in ABLAC's first motion to dismiss.  However, Plaintiff chose to ignore the Notices attached, and instead, she amended the COBRA allegations in the Complaint minimally without addressing the core problems with her original complaint.   Plaintiff's conflicting allegations regarding whether or not she received the 2020 COBRA Notice continues to be present throughout the First Amended Complaint. *Compare* Am. Compl. ¶¶ 12, 14, 26, 37-38, 78 (no notice received) and ¶¶ 36, 72, 81, 83-88, 93, 96-100, 102-104, 109, 112 (non-compliant notice).  Further, Plaintiff added to Count III of the First Amended Complaint by citing to an alleged violation of 29 U.S.C.

---

[6] Under Fed. R. Civ. P. 15(a)(1)(B), a party may amend its pleading once as a matter of course within . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.  ABLAC filed its first motion to dismiss on November 23, 2022, thus, Plaintiff had until December 14, 2022 to amend her complaint (21 days). Plaintiff amended her original complaint one day late on December 15, 2022.

§ 1163(a)(1), (2), and (4) in the title of Count III.  Am. Compl. at 11.  However, nowhere in the First Amended Complaint does Plaintiff address this newly included allegation regarding § 1163(a)(1), (2), and (4).  Thus, Plaintiff's First Amended Complaint is still full of inconsistencies and contradictions that were not resolved upon amendment.

## **ARGUMENT**

### I.    THE COBRA COUNTS SHOULD BE DISMISSED BECAUSE PLAINTIFF LACKS STATUTORY STANDING UNDER ERISA

Bootle seeks recovery of statutory penalties and other relief under ERISA's enforcement provisions for failure to meet COBRA election notice requirements. *See* Am. Compl. ¶ 36. However, Plaintiff cannot assert a cause of action under ERISA because she no longer qualifies as a "plan participant."  Under ERISA, a plan administrator's alleged failure to provide documents is actionable under § 1132(c) only when: (1) the request is made by a plan participant or beneficiary and (2) the lawsuit demanding penalties is filed by a plan participant or beneficiary.  A "participant" is "any employee or former employee... **who is or may become eligible** to receive a **benefit** of any type from an employee benefit plan." 29 U.S.C. § 1002(7) (emphasis added).  The U.S. Supreme Court has stated that the term "participant" means either employees in, or reasonably expected to be in, currently covered employment, or former employees who have a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989) (cleaned up).  The Court continued: "in order to establish that he or she 'may become eligible' for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Id*. at 117–18.  "A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the [phrase] 'may become eligible.'" *Id*. at 118.

To be sure, former employees may be ERISA participants. *LaRue v. DeWolf, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 n.6 (2008).   Yet participants must have a "colorable claim to vested benefits." *Bruch*, 489 U.S. at 117–18 (citation omitted).   Notably, "the statutory penalty for failing to provide plan documents to a participant... is not a [plan] benefit" in itself. *Harzewski v. Guidant Corp.*, 489 F.3d 799, 805 (7th Cir. 2007).   "Eligibility is determined at the time that the lawsuit is filed." *Morrison v. Marsh & McLennan Cos.*, 439 F.3d 295, 304 (6th Cir. 2006).   Thus if Plaintiff Bootle was "neither a participant nor a beneficiary under the [Plan] at the time [she] commenced this action, [she] lacks standing to claim that [ABLAC] failed to produce requested Plan documents." *Id*.   Moreover, Plaintiff cannot make a claim for vested benefits because she is no longer eligible for COBRA continuation coverage as that right expired well in advance of the commencement of this litigation.

Plaintiff Bootle is no longer a Plan participant and was not a Plan participant at the time suit was filed.  In the First Amended Complaint, Plaintiff admits that she is not a current participant by stating that she *was* a plan participant and *may once again* become eligible for coverage benefits.  Am. Compl. ¶¶ 41-42. (emphasis added).   COBRA benefits are available for 18 months where the qualifying event is "termination." 29 U.S.C. §1162(2)(A)(i). *See Geissal v. Moore Med. Corp*., 524 U.S. 74, 80 (1998) ("If a qualified beneficiary makes a COBRA election, continuation coverage dates from the qualifying event, and when the event is termination or reduced hours, the maximum period of coverage is generally 18 months.").   Additionally, while the premium assistance provided by the ARPA provided continuation coverage until September 30, 2021, Bootle's eligibility for the premium assistance would have expired when she reached the end of her maximum COBRA continuation period in August 2021 (18 months after her termination in February 2020). Pub. L. No. 117-2 [H.R. 1319], 135 Stat. 4 § 9501 (2021).

Plaintiff filed her original complaint on July 26, 2022. *See* ECF No. 1-2. Because Plaintiff waited over two-and-a-half years after her qualifying event (termination) and after expiration of the ARPA continuation period ending September 30, 2021, her COBRA benefits have expired. *See Schwartz v. ADP, Inc.*, 2021 WL 5760434, at *3–4 (M.D. Fla. Dec. 3, 2021) (finding that plaintiff did not have standing under ERISA because plaintiff was not a plan participant when he sued and he failed to identify or pursue a single ERISA benefit to which he was, or could be, entitled to); *see also Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 101 (2d Cir. 2005) ("Participants can lose standing to sue if, despite their having suffered an alleged ERISA violation, their participant status has been terminated before suit is filed."); *Harzewski*, 489 F.3d at 804–05 ("The statute authorizes suits for benefits, just not for damages separate from those benefits.... Nor can [plaintiff] sue to obtain the statutory penalty for failing to provide plan documents to a participant, since that penalty is not a benefit either.").

Additionally, Plaintiff has provided no explanation as to why she waited over two-and-a-half years to file her original complaint. Courts have previously found in ERISA cases that it would not be equitable to allow a plaintiff to go forward with their action for penalty damages where the unexplained and unreasonable delay in filing the action would make it more difficult for a defendant to defend themselves at a later date. *See Winchester v. Pension Comm. of Michael Reese Health Plan, Inc. Pension Plan*, 942 F.2d 1190, 1194 (7th Cir. 1991) ("find[ing] that [plaintiff's] delay of more than three years in bringing this action, while it may not necessarily reach the level of laches, provides additional support for not expanding the definition of "participant" to include an individual in [plaintiff's] situation); *see also Farries v. Stanadyne/Chicago Div.*, 832 F.2d 374, 382 (7th Cir. 1987) ("It would place a terrible burden on a company to preserve evidence for claims that may never be raised."). Similarly, Plaintiff's delay

of almost three years in bringing this action provides additional support for the Court to find that Plaintiff is no longer a plan participant.

Because Plaintiff cannot make a claim for vested benefits, in order to qualify as a plan participant who may become eligible to receive a benefit under ERISA, she must have a reasonable expectation of returning to covered employment. *Bruch*, 489 U.S. at 117.  In the First Amended Complaint, Plaintiff, for the first time, states that she "seeks reinstatement to her previous position with all previously afforded benefits herein."  Am. Compl. ¶ 42.  However, merely claiming to seek reinstatement does not demonstrate that Plaintiff has a reasonable expectation to return to covered employment.  In fact, Plaintiff does not even allege in the First Amended Complaint that she has a reasonable expectation to return to employment with ABLAC.  Plaintiff has no statutory right to be rehired, nor any contractual right to be rehired as she was terminated for cause.  *See Shawley v. Bethlehem Steel Corp.*, 784 F. Supp. 1200, 1205 (W.D. Pa. 1992); *see also Winchester*, 942 F.2d at 1193 (refusing to hold that "by filing a discrimination suit, [after being dismissed for cause], plaintiff may harbor a 'reasonable expectation of returning to covered employment.'"); *Eide v. Grey Fox Technical Servs. Corp.*, 329 F.3d 600, 607 (8th Cir. 2003) (finding that former employees did not have a reasonable expectation of returning to covered employment after they were terminated, as they did not "have the option or expectation of returning to work").  Similarly, Plaintiff does not have a reasonable expectation of returning to employment with ABLAC.  Thus, dismissal is proper because Bootle lacks statutory standing under ERISA.

## II.     THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED UNDER 12(B)(1) FOR LACK OF ARTICLE III STANDING

"Article III of the United States Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' U.S. Const. Art. III, § 2, and 'the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III.'"  *Hollywood*

*Mobile Estates, Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1264-65 (11th Cir. 2011) (citation omitted). To establish standing, a plaintiff must demonstrate: (1) she suffered an "injury-in-fact"; (2) there is a causal connection between the asserted injury-in-fact and the challenged action of the defendant; and (3) the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). An injury-in-fact must be "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent." *Id.* at 560.

### A.      There is No Causal Connection Between Plaintiff's Purported Injuries and the Alleged Deficiencies In the 2020 COBRA Notice.

Plaintiff cannot establish causation or redressability with respect to her COBRA Counts. The causation element of Article III standing requires "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Hollywood Mobile Estates Ltd.*, 641 F.3d at 1265 (quoting *Lujan*, 504 U.S. at 560).

Plaintiff claims that she lost health insurance and has unpaid medical bills as a result of the allegedly deficient 2020 COBRA Notice. Am. Compl., ¶¶ 74, 81, 88. However, Plaintiff's First Amended Complaint continues to be full of inconsistencies, thus making it impossible to fairly trace her purported injuries to the actions, or inaction, of ABLAC. Plaintiff has not attempted to cure any of the deficiencies from her original complaint, as pointed to in ABLAC's first motion to dismiss. For example, Plaintiff first alleges that she never received a COBRA notice from ABLAC and thus, she could not make an informed decision to elect continuation coverage. Am. Compl., ¶¶ 26, 38-39. However, the First Amended Complaint continues to state that the allegedly deficient 2020 COBRA Notice confused and misled the Plaintiff. *Id.*, ¶ 81. It is still unclear from the First Amended Complaint as to whether Plaintiff did or did not receive the 2020 COBRA Notice, as the allegations are contradictory and inconsistent with the 2020 COBRA Notice that was sent to the

Plaintiff.  Thus, her purported injury in fact is not fairly traceable to the allegedly deficient 2020 COBRA Notice, nor the alleged inaction to send the same Notice.

Furthermore, Plaintiff cannot simultaneously allege that (1) she never received the 2020 COBRA Notice and (2) that she was injured from the deficiencies contained within the 2020 COBRA Notice (that she never received).  Thus, Plaintiff does not have standing to assert this claim because she cannot prove that the deficiencies in the 2020 COBRA Notice resulted in actual harm to her if she never received this Notice from ABLAC.

### B.   There is No Causal Connection Between the Alleged Informational Deficiencies in the 2020 COBRA Notice and Plaintiff's Purported Injuries.

The Eleventh Circuit recently issued an *en banc* decision where the court reiterated that a bare procedural violation of a statute is not enough to show concrete harm.  *See Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) (holding that a "bare procedural violation, divorced from any concrete harm" is not enough to support standing).  Instead, a plaintiff must establish one of two things: (1) that the statutory violation resulted in actual harm—whether tangible or intangible; or (2) the violation "posed a material risk of harm to the plaintiff." *Godiva*, 979 F.3d at 928.  If the answer to both of these inquires is no, the plaintiff failed to establish standing. *Id*.  Courts cannot imagine or piece together an injury sufficient to give a plaintiff standing when it has demonstrated none, and courts are powerless to 'create jurisdiction by embellishing a deficient allegation of injury. *Id*. at 925.

Plaintiff alleges that ABLAC's 2020 COBRA Notice was informationally deficient in three ways: (1) the Notice failed to provide the address to which payments should be sent (Count IV); (2) the Notice failed to explain the consequences of failing to elect or waiving continuation coverage (Count V); and (3) the Notice was not written in a manner calculated "to be understood by the average plan participant" (Count VI). The Plaintiff cannot establish a causal connection for

the second and third alleged informational deficiencies.  As explained in Section III.B., *infra*, Count IV fails as a matter of law because the 2020 COBRA Notice in fact provided an address to which continuation coverage premiums should be sent.  Plaintiff's allegations are contradicted by the plain language of the Notice and cannot serve as a basis for injury in fact.

Plaintiff has not established an injury-in-fact or causation with regard to Count V.  In this Count, Plaintiff only alleges that there is "no explanation [in the 2020 COBRA Notice] that a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries to portability of group health coverage, guaranteed access to individual health coverage, and special enrollment".  Am. Compl., ¶ 110.  Plaintiff does not explain how the lack of information regarding a qualified beneficiary harmed her or interfered with her ability to elect COBRA coverage.  In fact, nowhere in the First Amended Complaint does Plaintiff state that she has any beneficiaries or dependents.  Thus, Plaintiff is unable to show that she was injured by the lack of information regarding beneficiaries when she herself does not have any beneficiaries.  Without more, this allegation is a "bare procedural violation, divorced from any concrete harm." *Spokeo*, 578 U.S. at 341.  Plaintiff must support this claim by showing either some harm caused by the violation or a material risk of harm. Without establishing this, her claim cannot stand.

Plaintiff has also not established causation as to Count VI.  This Count alleges that the COBRA Notice was not written to be understood by the average plan participant. Am. Compl., ¶¶ 83, 87, 92, 95, 112.  Plaintiff states that the [2020 COBRA] Notice both confused and misled her, but she never explains how or why the 2020 COBRA Notice confused her.  Am. Compl., ¶ 81. She does not point to any confusing statements in the 2020 COBRA Notice itself, or any omissions that could have cured the alleged deficiencies.  She also fails to explain how these alleged deficiencies led to her inability to understand the 2020 COBRA Notice in a way that impeded her decision to elect or not elect COBRA coverage.  Plaintiff also alleges that the Notice was sent in a

haphazard and piece-meal fashion (Am. Compl., ¶ 83), but this statement is patently false as the 2020 COBRA Notice was sent to Plaintiff as a single notice consisting of 14 pages, including a physical election form to be sent if electing coverage. *See* Exhibit 2.  Again, Plaintiff does not point to any components of the 2020 COBRA Notice that were piece-mealed in a manner that would lead Plaintiff to fail to understand her rights.

Although it is premature at this stage to assess the reasonableness of the 2020 COBRA Notice, this is not a free pass around the requirements of Article III.  *See Carter v. Sw. Airlines Co.*, 2020 WL 7334504, at *7 (M.D. Fla. Dec. 14, 2020) (holding that plaintiff did not have Article III standing in COBRA action because plaintiff failed to explain how the alleged deficiencies in the notice led to her inability to elect continuation coverage).  Plaintiff must allege a concrete injury-in-fact and causation to establish standing. *See Godiva*, 979 F.3d at 925 ("We will not 'imagine or piece together an injury sufficient to give [a] plaintiff standing when it has demonstrated none,' and we are powerless to 'create jurisdiction by embellishing a deficient allegation of injury.'"). Plaintiff's conclusory statements do not satisfy this burden. *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."). The Court should dismiss these informational injuries for failure to establish standing.

## III.    THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED UNDER 12(B)(6) FOR FAILURE TO STATE A CLAIM FOR RELIEF

In addition to failing to establish Article III standing, the First Amended Complaint does not state a plausible claim for relief under ERISA.  Contrary to Plaintiff Bootle's allegations, the 2020 COBRA Notice complies with 29 C.F.R. § 2590.606-4, the applicable Department of Labor regulation.  Under ERISA, the plan administrator of an employer health plan is required to provide eligible participants with "written notice … of the[ir COBRA healthcare continuation] rights." 29

U.S.C. § 1166(a).  Under Eleventh Circuit law, the information contained in a COBRA notice must "be sufficient to permit the discharged employee to make an informed decision whether to elect coverage." *Scott v. SunCoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1230 (11th Cir. 2002). Technical deficiencies are not fatal and will not impose liability if the deficiencies "did not prevent [the plaintiff] from making a meaningful choice to continue her coverage." *Franks v. Cent. Garden & Pet Co.*, 2007 WL 2320624, at *6 (M.D. Ga. Aug. 10, 2007).

The Department of Labor issued a Model COBRA Continuation Coverage Election Notice and included it in the appendix to 29 C.F.R. § 2590.606-4 (the "Regulation").[7]  Although the notice is "not mandatory," "[u]se of the model notice, ***appropriately modified and supplemented***, will be deemed to satisfy the notice content requirements." 29 C.F.R. § 2590.606-4(g) (emphasis added). Plaintiff's First Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted because the 2020 COBRA Notice includes all of the information required by the Regulation and closely tracks the Model Notice, even expanding upon the Model Notice to include additional information required by the Regulation.

### A.    The COBRA Notice Complies with 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4(b).

Count III of the First Amended Complaint is an incomprehensible recitation of alleged ERISA and COBRA statutory and regulatory violations, many of which are then repeated in Counts IV, V, and VI.  These allegations, which were copied from other COBRA actions, are inapplicable here.[8]

---

[7] A copy of the Model COBRA Continuation Coverage Election Notice is also available on the Department of Labor website at https://www.dol.gov/agencies/ebsa/laws-and-regulations/laws/cobra (last visited Dec. 28, 2022).

[8] *See Heyaime supra*, note 2.

The 2020 COBRA Notice contains all information and was timely sent as required by 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4(b).  To begin, Plaintiff alleges that ABLAC never sent Plaintiff the required COBRA continuation notice. Am. Compl., ¶ 37.  However, the 2020 COBRA Notice reflects that it was sent on February 12, 2020, a mere six days after Plaintiff's qualifying event took place. 2020 COBRA Notice (Ex. 2) at 1. Importantly, a plan sponsor or administrator need not ensure that a beneficiary actually receives the required notice.  Rather, what is important is whether the plan administrator sent the notice using methods that are "reasonably calculated" to reach plan participants, such as through in-hand delivery and first class mail to the beneficiary's last known address. *See* 29 C.F.R. § 2520.104b-1(b)(1), (c)(1); *DeBene v. BayCare Health Sys., Inc.*, 688 F. App'x 831, 839 (11th Cir. 2017).  In the present case, ABLAC used a method (U.S. postal mail) that was reasonably calculated to reach Plaintiff by sending the 2020 COBRA Notice to Plaintiff's last known address in Miami, Florida.  Thus, Plaintiff cannot plausibly claim that ABLAC did not send a timely COBRA notice.

Plaintiff also alleges that the 2020 COBRA Notice itself never actually explains how to enroll in COBRA, in violation of 29 C.F.R. § 2590.606-4(b)(4)(v), and that it does not include a physical election form. Am. Compl., ¶ 85.  However, the 2020 COBRA Notice does both.  The Notice includes a heading entitled "How Can I Elect COBRA Coverage" in bold typeface. 2020 COBRA Notice (Ex. 2) at 4.  The Notice then states:

> To elect COBRA coverage, you must complete the enclosed COBRA Election Form and submit it to WageWorks, Inc. as stated on the COBRA Election Form no later than the end of your election period, which is **5/2/2020**. Under federal law, you have 60 days after the later of the date of this notice or the date coverage is lost under the Plan(s) to elect COBRA coverage.[9]

---

[9] *See* **Exhibit 4** at 1.  Exhibit 4 is a comparison of the DOL Model Election Notice with ABLAC's 2020 COBRA Notice.

The 2020 COBRA Notice also includes "COBRA ELECTION FORM INSTRUCTIONS" and a COBRA ELECTION FORM (physical election form like the Model Election Notice) that includes information about how to elect continuation coverage. *Id*. at 10-11, 13-14.   The Instructions include a heading entitled "Electing COBRA Coverage" in bold typeface.  Thus, Plaintiff's assertion that the Notice does not explain how to elect continuation coverage or fails to include a physical election form is simply incorrect.  Plaintiff's claim that the Notice merely directs plan participants to a "catch-all" general H.R. phone number to enroll in COBRA is also incorrect.  Am. Compl., ¶ 85.  The 2020 COBRA Notice states, "If you have any questions or require further clarification about this notice or your rights to COBRA coverage, please feel free to contact our office so we may assist you. Our Customer Service Representatives may be reached at 888-678-4881 or through the Message Center at **mybenefits.wageworks.com**." 2020 COBRA Notice (Ex. 2) at 1.  There is nothing confusing or vague regarding the number to be called for assistance with the COBRA continuation notice or election form. Count III fails as a matter of law because the 2020 COBRA Notice complied fully with the COBRA notice requirements and Regulations.

**B.      The Notice Provides the Address to Which Payments Should be Sent.**

In Count IV of the First Amended Complaint, Plaintiff claims that the 2020 COBRA Notice violates 29 C.F.R. § 2590.606-4(b)(4)(xii) for failure to provide the address to which payments should be sent. Am. Compl., ¶¶ 84, 103.  This too is incorrect.  The election form in the 2020 COBRA Notice includes a section titled "Paying for COBRA Coverage" in bold typeface.  2020 COBRA Notice (Ex. 2) at 10.  The 2020 COBRA Notice states, "Please note that your **initial and ongoing payments** will be sent to a different address than the COBRA Election Form. **Please make checks payable to: WageWorks, Inc., PO Box 660212, Dallas, TX 75266-0212**. *Id*. at 11.  Contrary to Plaintiff's claim, the Notice clearly provides (consistent with the DOL Model Election Notice) the address to which payments should be sent. *Id*.; *see also* Ex. 4 at 1.  Plaintiff's

assertion that she was "left ready and willing, but unable, to properly enroll and maintain continuation coverage" because of the lack of an address of where to send payments to is thus not plausible nor credible. Am. Compl., ¶ 105.  Plaintiff also states that ABLAC violates the regulation because the Notice fails to include information on how coverage can be lost prematurely.  Am. Compl., ¶ 86.  This is again incorrect. The Notice includes information about the consequences of delayed and non-payment, and this language is consistent with the DOL Model Election Notice. 2020 COBRA Notice (Ex. 2) at 6-7; *see also* Ex. 4 at 2.

For these reasons, Count IV of the First Amended Complaint fails to state a cause of action.

**C.  The Notice Provides an Explanation of the Consequences of Failing to Elect or Waive Continuation Coverage.**

In Count V of the First Amended Complaint, Plaintiff Bootle alleges that ABLAC failed to provide all required explanatory information under 29 C.F.R. § 2590.606-4(b)(4)(vi). Am. Compl., ¶¶ 86, 109.  The Regulation states that a notice shall contain, "An explanation of the consequences of failing to elect or waiving continuation coverage, including an explanation that a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries…." 29 C.F.R. § 2590.606-4(b)(4)(vi).  However, the 2020 COBRA Notice does contain an explanation that the participant will lose their right to elect coverage if they do not elect the continuation coverage. 2020 COBRA Notice (Ex. 2) at 10.  The Notice also explains how to revoke a waiver before the original election deadline, as required by the regulation. *Id*. Additionally, Plaintiff's own argument is undermined by the Model Notice, which itself does not enumerate all information required in § 2590.606-4(b)(4)(vi).  Although Plaintiff states that ABLAC did not adhere to the DOL Model Election Notice, ABLAC used either the same or similar language in the DOL Model Notice as it pertains to § 2590.606-4(b)(4)(vi) in the 2020 COBRA Notice. *See* Ex. 4 at 3-4.  Additionally, ABLAC added information required by the regulation that

is not included in the Model Election Notice with regards to how a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries. *See* 2020 COBRA Notice (Ex. 2) at 4; *see also* Ex. 4 at 4. Thus, the 2020 COBRA Notice does contain all required information, and Count V fails to state a claim upon which relief can be granted.

> ### D.      The Notice Is Written In a Manner Calculated To Be Understood By the Average Participant.

In Count VI of the First Amended Complaint, Plaintiff alleges that ABLAC failed to provide the COBRA Notice written in a manner calculated to be understood by the average plan participant. Am. Compl., ¶ 112. Plaintiff states that ABLAC failed to adequately explain the procedures for electing coverage, how to enroll, where to send payment, the consequences for untimely payments, failure to include explanatory information, and failure to identify who the COBRA Administrator is/was. *Id.* These assertions are conclusory and are refuted by the 2020 COBRA Notice itself, which largely tracks the Model Notice and even adds additional information not included in the Model Notice as required by the regulation. *See* Ex. 4.

Whether a defendant's COBRA notification "complies with the law" turns on "whether the Notice is understandable by an average plan participant." *Vazquez v. Marriott Int'l., Inc.*, 2018 WL 3860217, at *4 (M.D. Fla. Aug. 7, 2018) (citation omitted). "This requirement has been interpreted as 'an objective standard rather than requiring an inquiry into the subjective perception of the individual [plan] participants.'" *Id.* While the Eleventh Circuit has not specifically addressed the regulatory requirement outlined in section 2590.606-4(b)(4), it has discussed that "[f]ollowing an employee's termination, 29 U.S.C. § 1166(a)(4)(A) requires plan administrators to notify the former employee of their right to receive continuation coverage." *Scott*, 295 F.3d at 1230. "The notice must be sufficient to permit the discharged employee to make an informed decision whether to elect coverage." *Id.* (citing *Meadows v. Cagle's, Inc.*, 954 F.2d 686, 692 (11th Cir. 1992)).

In the instant case, ABLAC has included all information required by the regulation, including the procedures for electing coverage, how to enroll, where to send payments, the consequences for untimely payments, and all other explanatory information. While Plaintiff alleges in the First Amended Complaint that ABLAC does not identify who the COBRA Administrator is (Am. Compl., ¶ 112), this is not required by the regulation. *See Carter*, 2020 WL 7334504, at 5–7 (finding that the regulation's plain language does not support a reading that a COBRA election notice must include information pertaining to the "Plan Administrator"). COBRA notices must include "the name, address and telephone number of the party responsible under the plan for the administration of continuation coverage benefits." § 2590.606-4(b)(4)(i). Here, the "party responsible for administration of the plan's continuation coverage benefits" is WageWorks, Inc.  2020 COBRA Notice (Ex. 2) at 1.  Nevertheless, ABLAC mentions the Plan Administrator by name, Assurant, Inc., multiple times in the 2020 COBRA Notice.  *Id*. at 1, 2, 3, 5, 8, 9, 10, 13, and 14.  The Notice includes all information required by the regulation for WageWorks. *Id*. at 9.  In sum, because the 2020 COBRA Notice is written in a manner intended to be understood by the average participant and contains the required regulatory information, Plaintiff has failed to state a claim in Count VI upon which relief can be granted.

## **CONCLUSION**

For the foregoing reasons, ABLAC respectfully requests that the Court grant the dismissal of Counts III through VI with prejudice, and grant such other relief as the Court deems just and proper.

Dated:  December 29, 2022

Respectfully submitted,

/s/  *Irma Reboso Solares*

Irma Reboso Solares (FL Bar No. 797073)
isolares@carltonfields.com
Sean W. Hughes (FL Bar No. 1038714)
shughes@carltonfields.com
CARLTON FIELDS, P.A.
2 MiamiCentral, Suite 1200
700 NW 1st Avenue
Miami, Florida 33136
Telephone:  (305) 530-0050
Facsimile:  (305) 530-0055

*Attorneys for Defendant American Bankers Life
Assurance Company of Florida*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 29th day of December, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will generate a Notice of Electronic Filing to all parties in the case who are registered users of the CM/ECF system.

/s/ *Irma Reboso Solares*

131550355